UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RANDALL RAY METCALFE                CIVIL ACTION

VERSUS                              NO. 07-8674

COASTAL TOWING, L.L.C.              SECTION "C" (2)


OPINION

Trial in this matter was held on February 9-10, 2009, and the matter was taken under advisement.[1] Having considered the record, the evidence and testimony adduced at trial and the law, the Court rules as follows.

The plaintiff, Randall Lane Metcalf ("Metcalf"), filed this lawsuit under the Jones Act and general maritime law, along with a claim for maintenance and cure, for damages allegedly arising out of an accident on board the M/V CARLEY T on July 7,

---

[1] At trial, the Court granted the defendant's motion for judgment as a matter of law with regard to the plaintiff's claim for punitive damages for failure to pay maintenance and with regard to the plaintiff's failure of proof as to past and future lost earnings/earning capacity. All other motions for judgment as a matter of law were taken under advisement, and are dismissed in lieu of this opinion.

2007, when the plaintiff was working as a deckhand for the vessel's owner, Coastal Towing, L.L.C. ("Coastal). Coastal filed a counterclaim against Metcalf alleging abuse of process, breach of contract and challenging standing.[2] (Rec. Doc. 54).

The uncontroverted evidence at trial indicated that Metcalf did injure three fingers on his left hand when untying a rope on the vessel. According to uncontroverted testimony, the M/V CARLEY T had been tied up to a platform in the Gulf of Mexico off the coast of Louisiana when the vessel's captain, Keith Thompson, told the plaintiff to start the engines because the vessel had to move. The plaintiff went to the engine room, started the engines, and then approached the stern deck to untie a rope from the stern bit. Captain Thompson used the PA system on the boat to tell the plaintiff to untie the rope prior to the accident.

The only eyewitnesses to the accident were the plaintiff and Thompson. Both testified that the plaintiff put his fingers between the rope and the front of the bit.[3] The

---

[2] The plaintiff filed this suit under a false name, Randall Ray Metcalfe. The Court denied the defendant's motion to dismiss for lack of standing at trial.

[3] Contrary to his counsel's recollection, the plaintiff testified at trial that he grabbed the eye of the rope by grabbing the eye "on the front side on both sides of it" while "[i]t was in front of the bit" because there was enough slack in the rope "at that time" for him to hold it.

boat moved and the plaintiff fingers were injured.[4]

The plaintiff filed suit alleging negligence and unseaworthiness claims based on inadequate training, the action of Thompson "yelling" at the plaintiff to hurry him and the action of Thompson in putting the vessel in gear when the plaintiff was untying the rope. Additional maintenance and cure was also claimed.

In order to prevail under the Jones Act, the plaintiff must prove that his employer was negligent. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)(en banc). Negligence is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances and that, in a Jones Act claim, the word "negligence" is given a liberal interpretation that includes any breach of duty that an employer owes to his employees who are seamen. *Id.* Under the Jones Act, if the employer's negligent act caused the plaintiff's injury, in whole or in part, then the employer is liable. *Id.* The fact that an accident occurred alone does not equate to a finding of negligence. *Id.*

The basis of the plaintiff's unseaworthiness claims is unclear. A plaintiff must

---

[4] The plaintiff and Landry testified at trial that the vessel moved because Thompson engaged the engines. Thompson testified at trial that the vessel moved because of a swell.

establish that the vessel was unseaworthy and that the unseaworthiness was a cause of the plaintiff's injuries. *Comeaux. V. T.L. James & Co.*, 666 F.2d 294 (5th Cir. 1994). A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman. *Park v. Stockstill Boat Rental, Inc.*, 492 F.3d 600 (5th Cir. 2007). A vessel owner is obligated to furnish a vessel that is reasonably suited for its intended purpose. *Id.* An inadequate crew can render a vessel unseaworthy. *Orient Mid-East Lines, Inc. V. A Shipment of Rice*, 638 F.2d 1032 (5th Cir. 1974).

**Inadequate training**

The uncontroverted evidence at trial indicated that the plaintiff was a certified rigger and had been tying and untying lines for several years. The plaintiff himself agreed that he did not need additional training to realize that he should not put his fingers in "pinch points" such as between the rope and the bit. He insisted that he knew how to properly handle lines. The plaintiff candidly admitted that he knew that he should not put his fingers between the rope and the bit when untying the rope. There was no evidence that additional training would have changed the dynamic of the accident at all. As such, the claim for inadequate training fails for lack of proof.

**Captain's order**

The plaintiff has failed to establish that the captain was at fault in ordering the

plaintiff to untie the rope over the PA system prior to the accident.[5] First, regardless of the captain's order or how it was phrased, the demonstrative evidence at trial establishes that the amount of time to properly release the eye rope is the same as the amount of time it would take to improperly release the eye rope. In addition, the Court can give no credence to the plaintiff's recent claim that he felt hurried by the captain's order. Plaintiff failed to mention the captain's order in his deposition testimony, which indicates it was not a factor in the accident. Landry testified that he heard the same profanity-laced order as the plaintiff, but Landry's credibility is likewise undermined by his admission at trial that he signed a statement provided to him by the plaintiff's counsel's investigator despite the fact that it contained false statements.[6] Accordingly, the Court finds that the plaintiff has failed to prove this claim by a preponderance of the evidence.

**Engagement of engines**

Finally, the Court finds that the plaintiff has failed to establish by a

---

[5] Destiny James Landry ("Landry") testified that the captain said "throw the f***ing eye off," and "take off the f***ing eye." The trial testimony from the plaintiff stated that Captain Thompson said "Throw the f***ing eye off." Thompson testified that he said words to the effect "Throw the rope off and let's go."

[6] The Court finds that the credibility problems facing these two witnesses is not limited to these facts, but that these facts alone warrant discrediting their testimony for purposes of this claim.

preponderance of the evidence that Thompson put the vessel into gear prematurely, thereby causing the rope to press against the bit as the plaintiff was untying it. Again, the credibility issues surrounding the testimony of Metcalf and Landry, coupled with Thompson's testimony that he was watching Metcalf and the vessel was not in gear, does not amount to a preponderance of the evidence that the vessel actually moved because of action on the part of the captain. Accordingly, this claim is also subject to dismissal.

**Maintenance and cure**

A seaman injured while in the service of a vessel is entitled to maintenance and cure from the date he leaves the vessel until he reaches maximum medical cure. *Rashidi v. American President Lines*, 96 F3d 124 (5th Cir. 1994). Maximum medical cure is a medical determination of when further treatment will result in no betterment of the seaman's condition. *Id.*

With regard to the plaintiff's claim for maintenance and cure, the plaintiff failed to controvert the expert testimony of Eric George, M.D., to the effect that the plaintiff reached maximum medical cure by July 2008, when maintenance and cure payments were discontinued. The plaintiff's expert, Dr. C. Noel Henley, did not examine the plaintiff at any time after March 2008 and testified only that "[a]nd as I have not seen

him since that time, it's hard for me to judge." (Depo. Henley, p. 58).   There is no evidence in the record to support the plaintiff's claim that maintenance and cure is owed.[7]  In addition, at trial the plaintiff, who testified that he was "staying with a friend" at the present time, failed to present evidence as to amount of relevant expenses relating to any maintenance and cure allegedly owing.  See e.g., *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 572, 587 (5th Cir. 2001).

**Counterclaim**

The defendant has filed a counterclaim for abuse of process and breach of contract, seeking a recovery of attorney's fees and costs allegedly incurred as a result of the plaintiff's provision of a false name and false social security number.  The Court finds that the defendant is not entitled to recover on these claims for the following reasons.

With regard to the claim of "abuse of process," Louisiana law recognizes that the elements of an ulterior motive and a willful act in the use of the process not proper in the regular conduct of the proceeding must be established. *Weldon v. Republic Bank*, 414 So.2d 1361, 1365 (La. App. 2d Cir. 1982).  "A legal and legitimate use of process, to

---

[7] There was discussion of outstanding medical bills at trial, but no evidence was presented that prior to trial any bills were presented to the defendant for payment and rejected.

effect the result which such process is designed by law to accomplish, is not an abuse thereof." *Id.* Here, it appears that the plaintiff did file suit to recover for a bona fide injury.

The Court recognizes that any perjury under 18 U.S.C. § 1621, as alleged by the plaintiff, is a matter of criminal prosecution. To the extent that false swearing does provide a basis for recovery in tort under La. Civ. Code art. 2315 or otherwise, damages caused by the wrongdoing must be proven. Such damages have not been proven here. Similarly, the failure to show any damages caused by the alleged breach of contract is also fatal to any recovery on the counterclaim.

As indicated at trial, the plaintiff's falsehoods served the defense well. This case was filed by a ward of the court and turned on the credibility of witnesses whose testimonial discrepancies could not be resolved. The Court finds that rather than cause detriment to Coastal's cause, the impeachment value inured to its benefit. In addition, the investigation using the false name and social security number should have uncovered evidence relative to the employment of the plaintiff for the last nine or ten years.

Accordingly,

IT IS ORDERED that the complaint of the plaintiff and the counterclaim of the

defendant be DISMISSED WITH PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana, this 12th day of February, 2009.

                                          HELEN G. BERRIGAN
                                        UNITED STATES DISTRICT JUDGE